IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA and STATE OF NEBRASKA,<br><br>                Plaintiff,<br><br>vs.<br><br>JOAN KICKEN and AME P.C. d/b/a CAMPBELL DRUG.<br><br>                Defendant. | 8:25CV00636<br><br>JURY TRIAL DEMANDED<br>COMPLAINT |

The United States of America, through the United States Attorney for the District of Nebraska, and Assistant United States Attorney Shereece Dendy-Sanders, and the State of Nebraska, through Susan M. Napolitano, on behalf of the United States Department of Health and Human Services and the State of Nebraska, state and allege as hereinafter set forth in their Complaint.

## JURISDICTION AND VENUE

1. This action is brought pursuant to the False Claims Act ("FCA") 31 U.S.C. §§ 3729 – 3733, as well as common law theories of unjust enrichment, payment by mistake and breach of contract. Plaintiffs seek to recover damages and civil penalties on behalf of the United States, the United States Department of Health and Human Services, and the State of Nebraska.

2. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1345 and 31 U.S.C. § 3732.

3. Venue is proper in this District pursuant to under 31 U.S.C. § 3732 and 28 U.S.C. § 1391 as the acts prescribed occurred in this District and Plaintiffs' claims arose in this District.

**PARTIES**

4.      Plaintiffs are the United States of America ("United States") acting on behalf of the United States Department of Health and Human Services ("HHS"), an agency and instrumentality of the United States, and the State of Nebraska.

5.      Defendant Joan Kicken ("Defendant"), owned and operated AME P.C. d/b/a Campbell Drug ("Campbell Drug"), a privately owned pharmacy located at 311 Main Street, Oshkosh, Nebraska.

**STATUTORY AND REGULATORY PROVISIONS**

*False Claims Act:*

6.      The False Claims Act, 31 U.S.C. § 3729(a)(1), provides any person who knowingly presents or causes to be presented to an officer or employee of the United States government a false or fraudulent claim for payment or approval shall be liable for a civil penalty of not less than $14,308 nor more than $28,619, plus three times the amount of the damages sustained by the United States because of the false or fraudulent claim. 28 C.F.R. § 85.5.

7.      The False Claims Act, 31 U.S.C. § 3729(a)(1), provides any person who knowingly makes, uses, or causes to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the United States shall be liable for a civil penalty of not less than $14,308 nor more than $28,619, plus three times the amount of the damages sustained by the United States because of the false or fraudulent claim. 28 C.F.R. § 85.5.

8.      The False Claims Act, 31 U.S.C. § 3729(a)(1), provides any person who knowingly makes, uses, or causes to be made or used a false record or statement to conceal, avoid, or decrease an obligation to pay or transmit money or property to the United States shall be liable for a civil

penalty of not less than $14,308 nor more than $28,619, plus three times the amount of the damages sustained by the United States because of the false or fraudulent claim. 28 C.F.R. § 85.5.

9. Under the FCA, knowing is defined as: 1) Actual knowledge that the claim or statement was false; 2) Deliberate ignorance of the truth or falsity of the information; or 3) Reckless disregard of the truth or falsity of the information. Specific intent to defraud is not required to prove an FCA violation. 31 U.S.C. § 3729(b)(1).

***Medicaid Program Overview:***

10. The Secretary of the United States Department of Health and Human Services administers and has oversight authority over the Medicaid Program through the Centers for Medicare & Medicaid Services ("CMS"). Medicaid was created in 1965 under Title XIX of the Social Security Act ("the Act"), 42 U.S.C. § 1396, *et seq*. Funding for Medicaid is shared between the federal government and those states participating in the Medicaid Program. In this case, the State of Nebraska participates in the Medicaid Program.

11. To do business with Medicaid, all health care providers, including Defendant, enter into a provider agreement with the appropriate agency in the State of Nebraska to fill prescriptions on behalf of Medicaid beneficiaries. The provider agreement with the State of Nebraska contains language which states that the provider will comply with all federal and state laws. *See* Government Exhibit 1.

12. When a beneficiary of a third-party program, such as Medicaid, initially presents a prescription to a health care provider, the health care provider must first determine the identity of the beneficiary/customer and the third-party payer to be billed for the filled prescription. The third-party payer is identified by a unique numerical identification code which has been assigned to each individual payer.

13. A health care provider then is required to communicate with the identified third-party payer, or its designated intermediary, through an online computer network to confirm the beneficiary/customer's eligibility, and to obtain authorization from the third-party payer or its designated intermediary, to fill said prescription.

14. The approval or denial of authorization of a prescription by the third-party payer or its designated intermediary to the health care provider normally occurs within a few seconds.

15. Once a third-party payer or its designated intermediary transmits authorization to the health care provider to fill and dispense the prescription, as prescribed to the identified beneficiary/customer, the third-party payer also simultaneously authorizes payment for the third-party cost of the prescription to the health care provider for delivery of the entire prescription.

16. Correspondingly and simultaneously, when the health care provider seeks and receives authority from Medicaid to fill and dispense prescriptions to a beneficiary/customer, the health care provider electronically presents, or causes to be presented, a claim for payment to the relative third-party payer, i.e., Medicaid.

17. If, during the process of filling an approved prescription, any of the information submitted to Medicaid or one of its designated intermediaries is determined by the health care provider to be inaccurate or incorrect in any manner, the health care provider can access the automated computer system and instantly reverse the transaction, thereby halting the transaction and stopping payment to the health care provider for the submitted prescription.

18. Each time a health care provider requests authorization from Medicaid or one of its designated intermediaries to receive electronic payment through the health care provider's computer system, the health care provider represents to the United States and the State of

Nebraska, that the health care provider has complied with all federal and state laws governing the relevant third-party program.

19. Each time the health care provider requests authorization from Medicaid or one of its designated intermediaries to receive payment electronically through the health care provider's computer system, the health care provider also represents to the United States and the State of Nebraska that the information submitted is accurate and correct.

***Medicare Program Overview:***

20. Funding for the Medicare Program is provided completely by the federal government.

21. In 1965, Congress enacted Title XVIII of the Social Security Act, commonly known as "Medicare," to pay for health-care services and items for the elderly and disabled. 42 U.S.C. § 1395 *et seq*. HHS is responsible for the administration and supervision of the Medicare program. CMS is an agency of HHS and is directly responsible for the administration of the Medicare program.

22. Medicare provides coverage for items and services that are reasonable and necessary to diagnose or treat an illness or injury or to improve the functioning of a malformed body member. Payment will be provided if medical necessity can be substantiated for covered items and services. 42 U.S.C. § 1395y; Sec. 1862(1)(A) of the Social Security Act; CMS Manual System, Pub. 100-02, Medicare Benefit Policy Manual, Ch. 16, sec. 20.

23. The Medicare program is comprised of four parts: Part A, which provides Hospital Insurance Benefits; Part B, which provides Medical Insurance Benefits; Part C, which establishes Medicare Advantage (or managed care) plans; and Part D, which provides for Prescription Drug Benefits. Medicare Part D is relevant to this matter.

24. In 2003, Congress passed the Medicare Prescription Drug, Improvement, and Modernization Act ("MMA"), Pub. L. 108-173, 117 Stat. 2066, which established a voluntary prescription drug benefit program for Medicare enrollees known as Medicare Part D.

25. An individual is eligible to enroll in Medicare Part D if the individual lives in the service area of a Part D plan and is entitled to Medicare benefits under Medicare Part A or enrolled under Medicare Part B. 42 U.S.C. § 1395w-l01(a)(3)(A); 42 C.F.R. § 423.30(a).

26. Individuals who receive benefits under Medicare are also referred to as "beneficiaries."

27. Medicare Part D's coverage is provided through third party contractors ("Plan Sponsors") who offer Prescription Drug Plans ("PDPs"). A Part D Plan Sponsor may be either a prescription drug plan, a Medicare Advantage organization that offers a Medicare Advantage prescription drug plan ("MA-PD plan"), a Program of All-inclusive Care for the Elderly ("PACE") organization offering a PACE plan including qualified prescription drug coverage, or a cost plan offering qualified prescription drug coverage. 42 C.F.R. § 423.4.

28. Every PDP must be approved by CMS. Medicare pays each PDP a per-beneficiary capitated rate based on the PDP's expected costs. Medicare Part D coverage is optional; beneficiaries must enroll and can select from a variety of PDPs.

29. When a pharmacy dispenses a drug to a Medicare beneficiary, it submits an electronic claim to the beneficiary's Part D Plan Sponsor and receives reimbursement from the Part D Plan Sponsor for the costs not paid by the beneficiary. The PDP then notifies CMS that a drug has been purchased and dispensed through a document called a Prescription Drug Event ("PDE") record, which includes data elements about the drug dispensed, the prescription, and the payment to the pharmacy. Each PDE that is submitted to CMS is a summary record that documents the final

adjudication of a dispensing event generally based upon claims received from pharmacies and is used to reconcile payments to a Part D Plan Sponsor. The data contained in PDEs is data related to payment of claims.

30. Part D Plan Sponsors must comply with "[f]ederal laws and regulations designed to prevent fraud, waste, and abuse, including, but not limited to, applicable provisions of Federal criminal law, the False Claims Act (31 U.S.C. § 3729, *et seq*.), and the anti-kickback statute (§ 1128B(b) of the Act)." 42 C.F.R. § 423.505(h)(1). Any "first tier, downstream, and related entity" that Part D Plans subcontract with (including pharmacies dispensing medication) must also comply with these, and any other, contractual obligations of the Part D Plan, *see* 42 C.F.R. § 423.505(i)(3)(iii), and separately comply with all applicable federal laws, regulations, and CMS instructions. *See* 42 C.F.R. § 423.505(i)(3)(iv). See Government Exhibit 2.

31. CMS regulations require Part D Plan Sponsors and related "downstream" entities that generate and submit PDE claims data to certify that such data is true, accurate, and complete (based on best knowledge, information, and belief) and that the PDE data is the basis for obtaining federal reimbursement for the health care products or services reflected therein. 42 C.F.R. § 423.505(k)(3).

32. Compliance with the regulatory requirement that Part D Plan Sponsors must certify that the claims data in the PDE record submitted to CMS be "accurate, complete, and truthful" is an express condition of payment under the Medicare Part D Program. 42 C.F.R. § 423.505(k)(3).

33. The submission of accurate PDEs is essential to the functioning of the Medicare Part D Program, the singular purpose of which is to provide coverage for drug products for the Medicare population.

34. The allegations in this Complaint relate to both Medicaid and Medicare Part D.

**UNLAWFUL CONDUCT**

35. At all times relevant to this Complaint, Defendant was a licensed pharmacist with the Nebraska Department of Health and Human Services and her responsibilities as the owner of Campbell Drug included purchasing prescription drugs from wholesale suppliers, maintaining an inventory of prescription drugs, dispensing prescription drugs to patients with valid prescriptions for such drugs, and submitting payment claims to private and government insurance plans or programs for prescription drugs that were dispensed.

36. Defendant received payment from both direct-paying customers and third-party payers, including Medicaid and Medicare - Part D, for prescriptions filled through Campbell Drug.

*<u>Medicaid Unlawful Conduct – Prescriptions for Defendant's Children:</u>*

37. For the period of October 1, 2018 through December 30, 2019, Defendant dispensed prescription drugs without a valid prescription for her children in violation of the Controlled Substances Act, 21 U.S.C. § 801 *et. seq.*, 21 CF.R. § 1306.04(a), and the Medicaid Program.

38. When Defendant dispensed these prescription drugs she electronically presented or caused to be presented claims for payment to Medicaid.

39. Defendant knew or had reason to know that the claims for payment were inaccurate or incorrect because there was no valid prescription at the time the transactions were submitted to Medicaid.

40. Each time Defendant submitted a transaction for payment without a valid prescription, Defendant caused a false of fraudulent claim to be submitted to the Medicaid and the State of Nebraska.

41. During the relevant time period, Defendant caused to be submitted 115 false claims to Medicaid for false prescriptions and received a total of $4,317.32 to which she was not entitled.

***Medicaid Unlawful Conduct – Name Brand v. Generic and Other Prescriptions***:

42. Between the period of November 1, 2018, through July 30, 2021, the Defendant falsely billed Medicaid for name-brand medication when Defendant actually provided the generic product to the beneficiary.

43. Defendant also falsely billed Medicaid for an unknown number of drugs that were never actually dispensed to Medicaid beneficiaries and who did not have prescriptions for such drugs.

44. Each time Defendant billed Medicaid for drugs that were dispensed without a valid prescription, Defendant presented a false or fraudulent claim to the United States and the State of Nebraska for payment or approval.

45. During this period, Defendant caused a loss of $5,318.81 to Medicaid. The loss amount was determined by the Investigations Medicare Drug Integrity Contractor ("I-MEDIC"), a CMS contractor. When conducting an audit of a pharmacy, the I-MEDIC uses a common practice called invoice reconciliation, i.e., comparing the pharmacy's inventory to what the pharmacy actually billed.

   a. Medicaid's largest monetary shortage was for the generic drug Ketoconazone CRE 2%, NDC#51672129803, a topical antifungal medication, which was shorted 720 units at a rate of about $1.53/unit resulting in a loss of approximately $1,652.40 of the total $5,318.81 loss to Medicaid or 31% of the total loss to Nebraska Medicaid.

    b. Defendant submitted 23 claims for a dispensing quantity of 1,380 units and was paid approximately $2,111.67 for the medications.

    c. For example, Defendant billed Nebraska Medicaid for 20 claims and 1,200 dispensed quantities for a total of $1,923.00 between dates of service of March 22, 2019, and June 21, 2021, for Medicaid beneficiary, D.B. See Government Exhibit 3.

### *Medicare Unlawful Conduct – Name Brand v. Generic:*

46. Additionally, between the period of November 1, 2018 through July 30, 2021, the Defendant submitted false claims to beneficiaries' Medicare Part D Plan Sponsors (or the Part D Plan Sponsors' Pharmacy Benefit Managers) for name-brand medications when Defendant actually dispensed the generic product to Medicare beneficiaries.

47. Defendant carried out this scheme by filling Medicare beneficiaries' prescriptions with generic drugs but actually billing for the cost of name-brand drugs. Name-brand drugs are generally more expensive than generic drugs and have higher reimbursement rates.

48. During this period, Defendant caused a loss of $187,128.25 to Medicare. The loss amount was also determined by the I-MEDIC using the invoice reconciliation practice.

    a. For example, from November 1, 2018 through July 30, 2020, Defendant submitted 34 claims to Part D Plan Sponsors for the name brand drug Kadian Extended-Release (ER) Capsules (Kadian) with NDC#s 00023601360 and 5244003260 for a quantity of approximately 1,990 capsules and an approximate payment of $25,191.17 for Medicare beneficiary A.N. The claims for A.N. represent approximately 100% of the total loss to Medicare for Kadian as A.N.

was the only beneficiary billed for that drug by Campbell Drug. *See* Government Exhibit 4.

b. The I-MEDIC analyzed Defendant's purchases of Kadian using supplier sources, such as wholesale invoices. The analysis showed that the name brand Kadian ER 30 mg had a shortage of approximately 1,690 capsules: not enough to fill prescriptions. In fact, Defendant would have had to substitute the lower cost generic drug of Kadian ER 30 mg (morphine sulfate ER 30 mg capsules, NDC#0022842711) which had an overage of 1,540 capsules. The I-MEDIC also noted that the two name brand NDC numbers for Kadian represented two of the top three drugs with shortages by dollar loss associated with Defendant. *Id*.

c. The name brand of Kadian ER 30 mg capsules had an average price of $12.66 per capsule, whereas the generic morphine sulfate ER 30 mg capsule had an average price per unit of $2.37 per capsule. The I-MEDIC also noted that there was a generic tablet formula of morphine sulfate ER 30 mg (NDC#00832022700) present at the pharmacy with an overage of 860 tablets with an average price of $0.72 per tablet.

d. The total cost estimate of this scheme resulted in a loss to Medicare of approximately $21,393.17. The name brand drug Kadian reflects approximately 12% of the total loss to the government. *Id*.

## COUNT I
### False Claims Act, 31 U.S.C. § 3729(a)(1)(A)
### Presenting or Causing False Claims to be Presented for Payment

11

49. The United States and the State of Nebraska reallege and incorporate by reference paragraphs 1 through 48 as though fully set forth herein.

50. Defendant knowingly, or with deliberate ignorance or reckless disregard, caused false or fraudulent claims for payment to be presented to officials of the United States government and the State of Nebraska, in violation of 31 U.S.C. § 3729(a)(1).

   a. Medicaid:

      1. Defendant knowingly presented or caused to be presented at least 115 false or fraudulent claims for the reimbursement of prescription medications to Medicaid, in the absence of valid prescriptions, for the benefit of her children;

      2. Defendant, in addition, falsely billed Medicaid for an unknown number of drugs dispensed to other Medicaid beneficiaries, in the absence of valid prescriptions; and

      3. The Controlled Substances Act, 21 U.S.C. § 801 *et. seq.*, 21 CF.R. § 1306.04(a), and the Medicaid Program prohibit dispensing prescription drugs without a valid prescription.

   b. Medicare:

      1. Defendant caused an unknown number of claims, yet to be determined, for the cost of name-brand drugs. Defendant dispensed generic drugs but actually billed for the name-brand drug. Name-brand drugs generally have higher reimbursement rates than generic drugs.

51. By virtue of these false claims, the United States was damaged in the amount of approximately $187,128.28, and is entitled to treble damages under the FCA, plus civil penalties for each violation.

## COUNT II
### False Claims Act, 31 U.S.C. § 3729(a)(1)(B)
### Making or Using False Records or Statements

52. The United States and the State of Nebraska reallege and incorporate by reference paragraphs 1 through 48 as though fully set forth herein.

   a. Medicaid:

   1. Defendant knowingly presented or caused to be presented at least 115 false or fraudulent claims for the reimbursement of prescription medications to Medicaid, in the absence of valid prescriptions, for the benefit of her children;

   2. Defendant, in addition, falsely billed Medicaid for an unknown number of prescription drugs to other beneficiaries in absence of valid prescriptions; and

   3. The Controlled Substances Act, 21 U.S.C. § 801 *et. seq.*, 21 CF.R. § 1306.04(a), and the Medicaid Program prohibit dispensing prescription drugs without a valid prescription.

   b. Medicare:

   1. Defendant knowingly presented or caused to be presented an unknown number of claims, yet to be determined, for the cost of name-brand drugs. Defendant dispensed generic drugs but actually billed for the name-brand

drug. Name-brand drugs generally have higher reimbursement rates than generic drugs.

53. The filing of these false claims is equivalent to making or using a false record to obtain money from the Government.

54. By virtue of these false claims, the United States was damaged in the amount of $187,128.28, and is entitled to treble damages under the FCA, plus civil penalties for each violation.

## COUNT III
### Payment by Mistake

55. This is an action brought by the United States and the State of Nebraska against Defendant pursuant to common law for payment by mistake of fact.

56. The United States and the State of Nebraska reallege and incorporate by reference paragraphs 1 through 48 as though fully set forth herein.

57. Defendant knowingly, or with deliberate ignorance or reckless disregard, made, used, or caused to be made or used false statements, and omitted material facts, to induce the United States and the State of Nebraska to approve and pay such false and fraudulent claims.

58. The United States' and State of Nebraska's mistaken understandings of fact were material to their decision to approve Defendant's requests for reimbursement.

59. The United States and State of Nebraska, acting in reasonable reliance on the truthfulness of the statements contained in Defendant's claim submissions, approved the requests for reimbursement to Defendant to which she was not entitled.

60. The United States and the State of Nebraska, unaware of the falsity of the records, statements and claims made or caused to be made by Defendant, paid claims that would not have

been paid but for Defendant's fraudulent and inducement practices to both the Medicaid and Medicare Programs.

61. Thus, the United States is entitled to recoup an amount of no less than $561,384.84, plus any other amounts to be determined at trial.

    a. Treble Damages: $187,128.28 (single damages) x 3 (treble) = $561,384.84.

    b. Penalties: The number of claims to be determined at trial. (# of fraudulent claims) x $14,308.00 (minimum civil penalty[1]) = Unknown.

## COUNT IV
## Unjust Enrichment

62. This is an action brought by the United States and the State of Nebraska against Defendant pursuant to the common law principle for unjust enrichment.

63. The United States and the State of Nebraska reallege and incorporate by reference paragraphs 1 through 48 as though fully set forth herein.

64. Defendant, in equity and good conscience, should not be permitted to retain monies she wrongfully received.

65. By obtaining from the United States and the State of Nebraska, through Medicaid and Medicare, funds to which she was not entitled, Defendant was unjustly enriched, and the United States and the State of Nebraska is entitled to damages in the amount of $561,384.84, together with any other penalties and damages to be determined at trial.

## COUNT V
## Breach of Contract

---

[1] 28 C.F.R. § 85.5.

66. This action is brought by the United States and the State of Nebraska against Defendant pursuant to the common law principle for breach of contract.

67. The United States and the State of Nebraska reallege and incorporate by reference paragraphs 1 through 48 as though fully set forth herein.

68. Defendant, as a result of the conduct alleged in paragraphs 1 and 48, breached provider agreements with Medicaid and/or its intermediaries.

69. Defendant, as a result of the conduct alleged in paragraphs 1 and 48, breached provider agreements with Medicare and/or its intermediaries.

70. The United States and the State of Nebraska, in consequence of the acts set forth above, have been damaged in the amount of $561,384.84, together with any other penalties and damages to be determined at trial.

## PRAYER FOR RELIEF AND JURY DEMAND

WHEREFORE, Plaintiffs, United States of America and State of Nebraska, pray judgment be entered in their favor and against Defendant, Joan Kicken and AME P.C. d/b/a Campbell Drug, as stated hereafter.

71. That the Court order, pursuant to Count I and the False Claims Act, the Defendant pay the United States triple the amount of its damages to be determined, plus civil penalties of up to $28,619 for each false claim; for all costs of this civil action; and for such other and further relief as the Court deems just and equitable;

72. That the Court order, pursuant to Count II, the return of all funds paid by the United States and the State of Nebraska to Defendant by mistake of fact, prejudgment interest, plus fees and costs;

73. That the Court order, pursuant to Count III, the Defendant pay the amount of damages to the United States and the State of Nebraska, prejudgment interest, plus fees and costs;

74. That the Court order, pursuant to Count IV, the Defendant to return all funds paid by the United States and the State of Nebraska by which Defendant was unjustly enriched, prejudgment interest, plus fees and costs; and

75. The Court award such other and further relief as is just, equitable and proper.

Respectfully submitted on this 31st day of October 2025.

        UNITED STATES OF AMERICA, Plaintiff

        LESLEY A. WOODS
        United States Attorney
        District of Nebraska

By:    s/ Shereece Dendy-Sanders
        SHEREECE DENDY-SANDERS, #24638
        Assistant U.S. Attorney
        1620 Dodge Street, Suite 1400
        Omaha, NE 68102-1506
        Tel: (402) 661-3700
        Fax: (402) 661-3081
        Email: shereece.dendy-sanders@usdoj.gov

        THE STATE OF NEBRASKA, Plaintiff

        MICHAEL T. HILGERS
        Attorney General

By:    /s/ Susan M. Napolitano
        Susan M. Napolitano
        Nebraska State Bar No. 23437
        Office of the Nebraska Attorney General
        2115 State Capitol
        Lincoln, NE 68509-8920
        Tel: (402) 471-9198
        Fax: (402) 471-4725
        susan.napolitano@nebraska.gov

CERTIFICATE OF SERVICE

      I hereby certify that on October 31, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following and I also hereby certify that a copy of the same has been served by regular mail, postage prepaid, to the following non-CM/ECF participants:

| | |
|---|---|
| JOAN KICKEN | AME P.C. d/b/a CAMPBELL DRUG |
| 290983 County Road G | 290983 County Road G |
| Minatare, NE 69356 | Minatare, NE 69356 |

                                                                    s /Shereece Dendy-Sanders
                                                                    Assistant U.S. Attorney